## The Cleveland Railway Co. *v.* Leis.

*Constitutional law — Municipal ordinances — Prescribing duties of motormen — Cars passing in opposite direction, etc.*

An ordinance of the city of Cleveland provided that motormen in charge of cars should exercise "all possible care and vigilance" on approaching any other car that is stopped for the purpose of receiving or letting off passengers. Another and similar ordinance provided that any car approaching another car which has been stopped for any purpose, and any car operating around a curve, should do so "with the greatest care" and under "complete control." *Held:*

That such ordinances are not authorized by the provisions of Section 3, Article XVIII of the Constitution of Ohio, and are unconstitutional and void in that they are indefinite, uncertain, and incapable of definition, and in that they establish a new and different degree of care from that established by the general law of the land.

(Decided July 3, 1919.)

Error: Court of Appeals for Cuyahoga county.

Messrs. *Squire, Sanders & Dempsey,* for plaintiff in error.

Messrs. *Payer, Winch, Minshall & Karch,* for defendant in error.

VICKERY, J.   This action is brought into this court to reverse a judgment rendered in the common pleas court of Cuyahoga county against The Cleveland Railway Company in favor of Josephine Leis, and to accomplish this result the railway company urges in oral argument two reasons why said judgment should not be allowed to stand:

1. The verdict is not sustained by sufficient evidence.

2. Because of the admission of certain ordinances in evidence.

From the way we view the situation these two reasons may be discussed and disposed of together, because a close reading of the record will disclose this fact: that if the ordinances had not been introduced and permitted to go to the jury the verdict could not have been sustained, or the jury might have reached a different conclusion, because there would have been no evidence in the record of any negligence of the railway company.

It seems that Josephine Leis, the plaintiff below, whom hereafter we shall call plaintiff, was a passenger on one of defendant's cars going south on Broadway, and at Hinde street the car stopped to let off passengers at the proper or south crosswalk of Hinde street; that plaintiff apparently lived on Hinde street and had to cross both the southbound and the northbound railroad tracks in order to reach her home; that at the time the car from which she alighted stopped, automobiles going in the same direction, south on Broadway, also stopped, as under the law they are required to do, and a truck following the street car upon which she was riding stopped behind the car from which

plaintiff alighted; that after plaintiff alighted, instead of standing until the car from which she alighted had started forward, she immediately walked back toward the end of the car (the car being a center entrance type) to go around behind it; and that as she passed around the rear of said car she was immediately struck by a northbound car and injured, as claimed, for which she obtained a verdict.

This recital will show that she had ceased to be a passenger and the railway company owed her the duty of just ordinary care, and that she herself must exercise that same degree of care for her own safety. We think the law well settled that where a pedestrian goes around behind a car standing on the street, on to another track, he can do so only by exercising ordinary care, such as people under similar circumstances usually exercise, and this required plaintiff, in the exercise of *ordinary* care in the existing situation, to look around and ahead of the object she was about to pass, and at a time and in a manner where the looking would be effective, and, if it were not for the city ordinances introduced in this case, I fail to see in the record evidence of such negligence of the defendant as would warrant a verdict. Indeed, if the record did not show that, she herself was not free from negligence which contributed to her own injury; hence it becomes of the utmost importance whether or not it was proper to introduce the ordinances, and, if so, whether the ordinances themselves are valid or not.

That part of one of the ordinances, so far as is germane to the question at issue, is as follows:

"Every motorman or other person or persons having the charge or control of any motor or other car being operated upon any track of any street railroad in the city of Cleveland, shall exercise *all possible care and vigilance* on approaching any other car that is stopped for the purpose of receiving or letting off a passenger or passengers."

The other ordinance is as follows:

"Any car approaching another car which has been stopped for any purpose, and any car operating around a curve, shall do so *with the greatest care* and shall be *under complete control.*"

The objectionable part of the first ordinance quoted is *all possible care and vigilance,* and, of the second, *the greatest care* and *under complete control.*

It is claimed that these ordinances create a new and different kind of care than has ever been recognized or is now recognized in the general law of the land. In our opinion these ordinances are invalid, because the words are so indefinite and uncertain that no one would be able to know whether he were violating the ordinances or not.

What is meant by "all possible care and vigilance"? Is it that degree of care that a common carrier owes to its passengers? Nay, does it not call for even a higher degree of care than has hitherto been recognized by the authorities? How should these words be defined? We have already pointed out that the plaintiff had ceased to be a passenger, and the railway company owed her only the same duty that it owed to other pedestrians on the streets, which is ordinary care, to be considered with reference to the particular circumstances of

each particular case, and the duty of the plaintiff was reciprocal and she was in duty bound to exercise the same degree, i. e., ordinary care, for her own safety. The effects of the ordinance would be to sever the reciprocal relations and duties of the parties.

Again, what is meant by having the car "under complete control"? Must it be under such control that it can be stopped in one inch, or one foot, or ten feet; or when is it under complete control?

Again, shall operate said car "with the greatest care." What does that mean? It is argued that in the *DuBois case,* 94 Ohio St., 93, an ordinance of the city of Bellaire, which provided that no one should operate an automobile in said city at a speed greater than the rate of speed that is specified in the statute, was held valid, and that if that ordinance was held valid so the one at bar must be; but this does not follow. The Bellaire ordinance declared a rate of speed which was within the power of any one to ascertain, and it was definite and certain. It is argued again that an ordinance, said to have been much more drastic than the ordinance here, requiring one to stop a car under certain circumstances, has been sustained; but again that does not meet the objection to the ordinance in the case at bar, for there the requirements were easy to determine, and one would know whether he was violating the ordinance or not, but here, in the case at bar, all is left to conjecture. If the doctrine established in *Schell* v. *DuBois, supra,* which is in effect that whenever an ordinance or law has been violated it is negligence "per se," and if that is the proximate cause of the injury then recovery may

be had; if, as I say, this is the law, it becomes doubly important that the ordinance *define* in no uncertain manner the things the doing or not doing of which would result in making a party guilty of negligence, so that one may know definitely what he must do or what he must not do, and we think the sections of these ordinances are void for indefiniteness and uncertainty of definition. Indeed, the learned trial judge apparently had his troubles, and tried to qualify the ordinance by adding something which was not in the ordinance, namely, that "they are to exercise all possible care and vigilance *which is to be used with the practical operation of a street car line."* Where did the learned judge get his authority for this qualification? He practically used the words of courts in defining the highest degree of care in passenger cases; but this was not a passenger case. He submitted to the jury the evidence, and then undertook to qualify it. If the ordinances were proper to be in evidence, then as to whether their terms had been violated or not was for the jury, and if they should think in a case that the car should have been under such complete control of the motorman that it could be stopped instantly, and was not, then under 94 Ohio State it was negligence *per se.* This would be a very dangerous doctrine to establish.

A more critical, or perhaps hypercritical, jury might have come to the conclusion that in this case it was the duty, in the exercise of all possible care and vigilance, for the railway company to send a man on ahead to warn off pedestrians, and there would be no end to the things which a jury might

find that the railway company should do to carry out the terms of the ordinance, remembering all the while that a failure in any respect would make the railway company guilty of negligence *per se!*

Such drastic legislation either by the state legislature or by the city council must be scanned very closely and denied, unless clearly authorized by the law. We hold, therefore, that the rule of negligence established by this ordinance, which applies to street railroads only, is a *new* and *different* one than is established by the general law of the land, and is a violation of Section 3, Article XVIII of the Constitution of Ohio, which provides that municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws. The rule of negligence and the law governing the same are general, and the law of negligence is a general law. 20 Ruling Case Law, Sections 1 and 2, are as follows:

" 'Negligence' is the word ordinarily used in common law terminology to express the foundation of civil liability for injury to person or property, when such injury is not the result of premeditation and formed intention.

"Negligence as the term is used in the law is a recognized ground of legal liability. Every person in the conduct of his affairs is under a legal duty to act with care and forethought; and if injury results to another from his failure so to do, he may be held accountable in an action at law."

Thus the law establishes the doctrine of negligence, and is general in its nature and surely must

be regarded a part of the great body of general
law, and under the home-rule amendment, whether
a city had adopted a charter or not, it was not con-
templated that a municipality might change the law
of negligence, and I can not agree with counsel for
plaintiff that general law refers only to statutory
law.   Surely the great body of common law, much
of which has not been codified, is as much a part
of the general law of the land as that part which
has been codified.   Our courts are daily engaged
in administering that part of our jurisprudence as
a part of the general law of the land.   The law of
negligence has not been codified; neither has the
law of partnership.  Suppose the city council would
undertake, under their home-rule powers, to change
the rule as to what should constitute a partnership.
For example, suppose council should see fit to say
that "he who shares in the profits of a concern
shall be liable as a partner," going back, if you
please, to the rule laid down in *Waugh* v. *Carver,*
2 H. Bl., 235, 14 R. R., 845, which formerly gov-
erned the law of partnerships.   Could anybody
claim that the council would have the power to
overrule the law as laid down in *Harvey* v. *Childs
& Potter,* 28 Ohio St., 319, which established a
new and different rule, and which is now the rec-
ognized rule in partnerships all the land over?
Surely not.   Counsel for plaintiff assert several
times in their briefs that general laws do not
include rules of common law, but nowhere cite
authority in point to sustain their contention.   The
case of *American Woodenware Mfg. Co.* v. *Schor-
ling,* 96 Ohio St., 305, cited in their brief, is not a

case in point. Neither is *Fitzgerald et al.* v. *City of Cleveland,* 88 Ohio St., 338.

I am somewhat familiar with most of the law laid down in the cases which construe and pass on the power of Cleveland to legislate and do things under its charter, for almost all of the cases when tried in the nisi prius court, where the questions were first raised, were heard by me when a nisi prius judge, and even if the words "general laws" as used in Section 3, Article XVIII of the Constitution, should have meant statutory laws, under its whole scope and power as finally adopted the home-rule amendment is limited to local matters.

There were two different parties on this proposition in the constitutional convention, the radicals and the conservatives. The radicals by means of the *charter city* were in favor of establishing a small state within the state, giving it absolute control; the other, in favor of giving it control over purely local matters. The debates in the constitutional convention on pages 1433 to 1498 and 1860 to 1869 throw much light upon the scope that it was intended to confer upon cities under the home-rule amendment.

Judge Rockel, a member of the constitutional convention from Clark county, in a recent article, has thrown some light on what was meant by the convention in adopting the home-rule amendment. After reciting the provisions relating to cities under the Constitution of 1851 he makes this statement:

"It was early agreed that the widest possible powers should be reserved for the municipality, that could consistently be done. Of course it

should not have a power that was not properly within the domain of the municipality.

"It was thought that the words 'local self-government' would include generally the character of the power reserved to the municipality, but it was at once seen that all matters pertaining to 'local self-government' could not rest alone in the municipality, without destroying the sovereignty of the state.

"The original draft stated the exception to be that 'all such charters shall be subject to the general laws of the state, except in "municipal affairs." ' This language was no doubt adopted from the Constitution of the state of California. An examination, however, of the construction placed upon this exception was so diverse among the Californian courts, that it was decided not to use it, and instead there was substituted the words 'affecting the welfare of the state as a whole.' This was a distinct recognition of the general power of the state.

"The original Cleveland draft gave to municipalities the 'power to enact and enforce within their limits such police, sanitary and other regulations as are not in conflict with general laws.' This likewise was thought too broad in that the police power was without limit, other than it must be such as could be enforced within the limits of the corporation. The word 'local' was inserted before the word 'police' and when this was done it was decided that the phrase 'affecting the welfare of the state as a whole' was superfluous, and it was stricken out, as it was considered as being included in the words 'general laws.' This was done in the

convention at the suggestion of a 'Home Ruler.'

"The committee felt, no doubt, that it could not in a more definite way draw the line between the powers that the city and the state might respectively have, than was done. Where home rule had been tried in other states, the courts were compelled to construe and define what was included in the organic law, and this would necessarily follow here on the proposed amendment.

"The Supreme Court, in the several decisions made, have, we think, carried into effect the intention of the framers. Johnson, J., in Billings v. Railway, 92 O. S., 485, well states the relation of a self-chartered municipality when he says:

" 'There is no "imperium in imperio," except in the sense that by the approval of the state the city exercises part of the sovereign power under the limitations imposed, and may thereby, subject to such limitations, exercise all the powers of local self-government. * * * The charter becomes the organic law of the municipality as such local powers are concerned. But the authority of the state is supreme over the municipality and its citizens as to every matter and every relationship not embraced in the field of local self-government.' "

It will be seen, then, that it was not thought for a moment that to confer local self-government upon a city, either chartered or unchartered, would give it the power to alter by ordinance a well-established rule of negligence and substitute therefor, so far as the street railroad alone is concerned, a different rule both of care and of negligence, for they are resultant terms.

We therefore are of the opinion that it was wrong to admit these ordinances for the reason that the same are indefinite and uncertain, incapable of definition, and establish a new and 'different degree of care, which was beyond the power of the city council to do.

The ordinances are, therefore, invalid, so far as these provisions are concerned, and the case must, therefore, be reversed and remanded to the court of common pleas for further trial.

*Judgment reversed, and cause remanded.*

DUNLAP, P. J., concurring. I concur in this judgment of reversal because I believe the council of the city of Cleveland was never authorized by the Constitution of Ohio to pass these ordinances. The provision of the constitution, that "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws," does not, in my opinion, authorize the passage of an ordinance which substitutes for well-settled principles of the common law, of wide and universal application, a different rule of conduct, upon the theory that it is an exercise of local self-government, or is a local police, sanitary or other similar regulation.

WASHBURN, J., concurring. I concur in the reversal of the judgment in this case on the ground that though conceding under the decisions of the supreme court that the municipality under

its home-rule charter had the right in the exercise of its police power to pass the ordinances in question, still such ordinances being general and indefinite in their wording, not requiring any definite and particular act to be done for the safety of the public, and their effect being only to change the common-law rule of negligence in a matter not purely local, are not admissible in evidence as hav-ing the force and effect of a law passed by the legislature. Such ordinances, which on their face attempt only to change in general terms the common law, are not to be measured by the same standard as a statute of the state; they should require definite and certain things to be done in order to have the force and effect of an act of the legislature and be admissible as a predicate of an act of negligence.